UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CERTAIN PROTECTION AND INDEMNITY | * | CIVIL ACTION NO. |
| UNDERWRITERS SUBSCRIBING SEVERALLY | * | |
| TO POLICY NO. TRM401041 AND TO | * | SECTION: " " |
| POLICY NO. TRM401204 | * | JUDGE |
| | * | |
| VERSUS | * | |
| | * | MAGISTRATE (   ) |
| CAPTAIN TIMMY, INC. | * | |
| Defendant | * | |
| *   *   *   *   *   *   *  | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, comes Certain Protection and Indemnity Underwriters subscribing severally to Policy No. TRM401041 and Certain Protection and Indemnity Underwriters subscribing severally to Policy No. TRM401204 (collectively "P&I Underwriters"), and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, respectfully represents:

## PRELIMINARY STATEMENT

1.

This action seeks a declaration of the rights and responsibilities of P&I Underwriters, with respect to policies of insurance, P&I Policy No. TRM401041 with a policy period of

February 9, 2003 to February 9, 2004[1] and P&I Policy No. TRM401204 with a policy period of February 9, 2004 to February 9, 2005[2] issued to Captain Timmy, Inc. relating to claims made against Captain Timmy, Inc. by Rutherford Oil Corporation in response to the allegations made by the United States Army Corps of Engineers that Rutherford Oil Corporation violated the Clean Water Act and Rivers and Harbors Act, all as is more fully described below.

## PARTIES TO THE ACTION

2.

Plaintiff P&I Underwriters are corporations and/or other business entities organized under the laws of a country other than the United States with their principal place of business in London, England.  P&I Underwriters insured defendant Captain Timmy, Inc. under P&I Policy No.: TRM401041, with a policy period of February 9, 2003 to February 9, 2004, and under Osprey P&I Policy No.: TRM401204, with a policy period of February 9, 2004 to February 9, 2005 (collectively the "Policies").

3.

Defendant Captain Timmy, Inc. ("Captain Timmy") is a Louisiana corporation with its principal place of business in Cut-Off, Louisiana.  At all pertinent times hereto, Captain Timmy, Inc. was doing business in the jurisdiction of this Court.  Captain Timmy may be served a copy of this pleading through its registered agent, Timmy Guidry, 115 E. 52 Street, Cut Off, Louisiana, 70345.

---

[1] Attached hereto as Exhibit "A."

[2] Attached hereto as Exhibit "B."

## JURISDICTION AND VENUE

4.

This is a maritime and admiralty claim, regarding the interpretation of a marine insurance policy, and jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1333.

5.

This action for declaratory judgment is brought pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

6.

Alternatively, this Court further has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that this matter involves diverse parties and an amount in controversy in excess of $75,000.00.

7.

Venue is proper in this district pursuant to 28 U.S.C. 1391 because the alleged events or omissions giving rise to this claim occurred within this judicial district and because Captain Timmy, Inc. resides in this district.

## FACTS

### The Corps' allegations against Rutherford

8.

On or about November 10, 2008, the United States Army Corps of Engineers (the "Corps") filed suit against Rutherford Oil Corporation under the Clean Water Act, 33 U.S.C. § 1311, 1319; and Sections 10 and 12 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 403,

406, seeking injunctive relief and civil penalties.[3]  The Corps' Complaint is incorporated herein as if copied *in extensio* and *verbatim*.

9.

The Corps alleges defendants pushed, dredged, and/or wheel washed a channel through the sea floor and/or oyster beds in State Tract 180 #1, State Tract 180 #2, and State Tract 179 #1.

10.

The Corps alleges that defendants' violation No. 1 occurred on or about February 12 through February 23, 2003; violation No. 2 occurred between, on or about March 22 through March 27, 2003; violation No. 3 occurred between, on or about November 10 – 11, 2003; violation No. 4 occurred between, on or about July 13 – 15, 3004; and violation No. 5 occurred between, on or about August 16 – 20, 2004.

11.

The Corps alleges that "the propellers and/or the bottom of the tows, rigs, vessels and/or marine plant cut into the bay bottom and dredged vegetation, oyster beds, and/or sediment from the bay bottom."

12.

The Corps alleges that defendants "discharged dredged material  by redepositing the dredged material onto adjacent sea grass beds, other adjacent vegetation, adjacent oyster beds, and/or adjacent bay bottoms."

---

[3] The Complaint of USA v. Rutherford, S.D. Tex., Civil Action No. 3:08-00231, CM/ECF Doc. No. 1, is attached hereto as Exhibit "C."

13.

The Corps alleges "[t]he above-alleged prop washing activities obstructed the navigable capacity of water of the United States and/or caused excavation, fill, alteration, and/or modification of East Galveston Bay and the aquatic ecosystem, and was a discharge of pollutants into the navigable waters of the United States."

14.

**Rutherford's allegations against Captain Timmy, Inc.**

Rutherford Oil Corporation named certain parties, including Captain Timmy, Inc., Tiger Towing, Inc., Transinland Marine, Inc, Stagg Marine, Inc., Triple S Marine, Inc., Henry's Towing, Inc., Henry's Marine Service, Inc., Caillou Island Towing Company, Inc., Inland Marine Management Corporation, Double Eagle Marine LLC; and Gravois Tugs, Inc. as a third-party defendant in its First Amended Third-Party Complaint, filed December 23, 2009.[4]   Rutherford's First Amending Third-Party Complaint is incorporated herein as if copied *in extensio* and *verbatim*.

15.

On information and belief, Rutherford did not have a contract of any nature whatsoever, written or oral, with Captain Timmy, Inc.

16.

Rutherford alleges that "to the extent Plaintiff's (the Corps') allegations against it are established (if at all), these allegations constitute a breach of contract or negligence on the part of Co-Defendants and Third-Party Defendants," including Captain Timmy, Inc.

---

[4] Rutherford's First Amending Third-Party Complaint, Case No. 3:08-cv-00231, CM/ECF Doc. No. 60 is attached hereto as Exhibit "D."

17.

Rutherford alleges that "at various times throughout 2003 and 2004, Rutherford entered into agreements with co-defendants and Third-Party Defendants to provide marine transportation to the following locations, respectively:  State Tract 180 #1, State Tract 180 #2, and State Tract 179 #1.[5]  Rutherford would show that under the terms of various agreements, Co-Defendants and Third-Party Defendants were hired to transport Rutherford's drilling and exploration equipment to and from the foregoing locations in East Galveston Bay."

18.

Rutherford alleges that "to the extent the allegations by Plaintiff are established against Rutherford (if at all), Rutherford will show that Co-Defendants and Third-Party Defendants are ultimately liable for their failure to perform their contractual obligations."

19.

Rutherford further alleges negligence on the part of Captain Timmy, Inc. through the following:

1. In failing to follow the plat of the designated route of ingress and egress to the various wells provided to the Co-Defendants and Third-Party Defendants;

2. In failing to abide by all applicable state and federal rules, regulations, and statutes;

3. In failing to take a course of ingress and egress that would protect against alleged prop washing and/or dredging damage or other alleged injury to the bay bottom or known oyster reefs in the areas surrounding the marine transportation operation; and

4. In failing to properly supervise and/or implement a transportation plan to ensure that not damage to the bay bottom or known oyster reefs occurred.

20.

---

[5] See First Amended Third Party Complaint, Civil Action No. 08-231

Rutherford further alleges that "to the extent that there is a finding that Rutherford is liable for any alleged damages caused by Co-Defendants and Third-Party Defendants, such damage was not proximately caused by Rutherford, but it was caused by Co-Defendants and Third-Party Defendants. Rutherford further asserts that under the terms of the agreements, Co-Defendants and Third-Party Defendants agreed to be employed only in lawful activities and further agreed to be responsible for any fines and penalties assessed against either itself or Rutherford in connection with the operation of its vessels. Moreover, Co-Defendants and Third-Party Defendants agreed to indemnify Rutherford for any losses arising out of the performance of the agreement. Accordingly, Rutherford is entitled to indemnity from Co-Defendants and Third-Party Defendants pursuant to the relevant agreements and pursuant to Chapter 32 of the Texas Civil Practice and Remedies Code for any damages, fines or penalties Rutherford incurs as a result of the events described herein."

21.

Rutherford further alleges that it is entitled to contribution from Co-Defendants and Third-Party Defendants pursuant to Chapter 33 of the Texas Civil Practices & Remedies Code for any liability that may be found to exist from the Plaintiff as a result of the events described herein.

22.

Rutherford further alleges that to the extent the allegations by Plaintiff are established against Rutherford (if at all), for Co-Defendants and Third-Party Defendants' various acts and/or omissions, Co-Defendants and Third-Party Defendants should be found liable to Rutherford for negligence and judgment should be rendered against Co-Defendants for any damages Rutherford sustains as a result of the events described herein.

23.

**Captain Timmy, Inc's Policies with P&I Underwriters**

At the times of the alleged actions, Captain Timmy had in effect P&I Policy No. TRM401041 with a policy period of February 9, 2003 to February 9, 2004, and a P&I Policy No. TRM401204 with a policy period of February 9, 2004 to February 9, 2005,[6] issued by P&I Underwriters.

24.

Co-defendant Inland Marine Management Corporation made demand against Captain Timmy, Inc. on January 2, 2009,  which demand was forwarded to Captain Timmy, Inc's broker and subsequently underwriter.

25.

Captain Timmy, Inc. did not give notice of loss, damage, injury, expense, cost or claim or circumstances which have not but may give rise to a claim, prior to being named as a third-party defendant on December 23, 2009.

26.

**CLAIM FOR DECLARATORY RELIEF**

P&I Underwriters incorporate by reference all the preceding paragraphs.

27.

Pursuant to 28 U.S.C. § 2201, P&I Underwriters seeks a declaration including but not limited to the following:

    a.    Neither P&I Policy Nos. TRM401041 or TRM401204, the terms, conditions, definitions, and exclusion of which are attached hereto and incorporated herein

---

[6]    See P&I Policy Nos. TRM401041 and TRM401204, exhibits "A" and "B."

8

by reference, provides coverage for the claims asserted by the Corps against Rutherford, or by Rutherford against Captain Timmy, Inc.

b.      The Policies do not provide coverage for Rutherford's claim for indemnity or breach of contract.

c.      Captain Timmy failed to comply with the Osprey Claims Notification Clause, which provides:

> . . . the insurers hereunder are not liable for any loss, damage, injury, expense, cost or claim whatsoever which would otherwise be recoverable under this policy of insurance, unless notice of such loss, damage, injury, expense, cost or claim or circumstances which have not but may give rise to a claim against the Assured is given in writing within 36 months from the expiry date of this policy.

d.      The Policies do not provide coverage for wheel-wash damage to the bay floor, nor for purported violation of the Rivers and Harbors Act or the Clean Water Act, which claims are the exclusive claims brought against Rutherford by the Corps and the exclusive claims from which Rutherford alleges negligence on the part of Captain Timmy, Inc.

e.      If and to the extent Rutherford is alleges or is found to have a claim under contract or indemnity, the Policies do not provide coverage for such claim for breach of contract or indemnity pursuant to the Osprey Contractual Cover Clause, which states:

> It is understood and agreed that, where required by written contract, the Assured is granted privilege to include hereunder other parties as additional Assureds.
>
> Notwithstanding the fact that such parties as advised are hereby named in their capacity as advised as co-Assured in this Policy, this cover will only extend insofar as they may be found liable to pay in the first instance for liabilities which are properly the responsibility of the Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which

would not have been recoverable hereunder by the Assured had such claim been made or enforced against him. (emphasis added).

f.      The Policies do not include claims or portions of claims arising directly or indirectly from pollution or contamination by any substance whatsoever as defined in the Policy, including but not limited to seepage, pollution, or contamination, or actual or potential discharge of any substance into the seas, water, land or air.

g.      The Policies does not include claims or portions of claims for punitive, exemplary or similar damages that may or could be award as a result of the underlying claim and litigation.

h.      The Policies do not provide coverage for specialist operations as defined in the Policy, to wit:

[The Policies] shall not apply to: [. . . ] any claim relating to damage, liability or expense incurred by the Assured during the course of performing specialist operations (including but not limited to dredging, well-stimulation cable or pipe laying, construction, installation or maintenance work, core sampling, depositing of spoil . . . to the extent that such loss, damage, liability or expense arises as a consequence of:-

(a) claims brought by the party for whose benefit the work was performed, or by any third party (whether connected with any party for whose benefit the work has been performed or not), in respect of the specialist nature of the operation.

i.      The Policies do not provide coverage for injunctive relief or remediation, which claims do not constitute "loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay" within the meaning of the Policies.

10

**WHEREFORE,** P&I Underwriters pray that after due proceedings are had, this court award declaratory relief as set forth above and that P&I Underwriters and determine the rights and legal relations of plaintiff, Captain Timmy, Inc. and defendants, P&I Underwriters, holding as set forth above, and such other relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted:

**DUNCAN, COURINTON & RYDBERG, L.L.C.**

s/ _____

**KELLEY A. SEVIN, T.A. (#25871)**
**ELTON F. DUNCAN, III (#14967)**
**HARRY E. MORSE (#31515)**
400 Poydras Street, Suite 1200
New Orleans, LA  701030
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-mail: ksevin@duncour.com
E-mail: eduncan@duncour.com
E-mail: hmorse@duncour.com
Attorneys for Plaintiff, P&I Underwriters

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, via e-mail, through CM/ECF electronic filing, this 29th day of July, 2010.

s/ _____

11